FILED

2009 Feb-02  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **STERLING BRION TABOLT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-1737-NE** |
| | ) | |
| **THE CITY OF HUNTSVILLE,** | ) | |
| **ALABAMA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

This case is before the court on defendants' motion to dismiss plaintiff's

complaint.[1]  Upon consideration of the motion, the pleadings, and the briefs, the court

concludes the motion is due to be granted.

## I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain a

"'short and plain statement of the claim' that will give the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*,

355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  "[O]nce a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, – , 127

---

[1]Doc. no. 7.

S. Ct. 1955, 1969 (2007) (citations omitted). These factual allegations need not be detailed, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at –, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986), and *Sanjuan v. American Bd. of Psychiatry and Neruology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*).

Thus, although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Viewed in this manner, the factual allegations of

2

the complaint "must be enough to raise a right to relief above the speculative level .

. . ." *Twombly,* 550 U.S. at – , 127 S. Ct. at 1965 (citations omitted).   Stated

differently, the plaintiff must plead facts sufficient to "nudge[] [her] claims across the

line from conceivable to plausible . . . ."  *Id.* at 1974.

## II.  PROCEDURAL HISTORY

Plaintiff, Sterling Brion Tabolt, has engaged in a long-running dispute with the

City of Huntsville, Alabama, the City's Department of Community Development

("DCD"), and several DCD employees.   The following summary of the facts

underlying the dispute — derived from an unpublished decision by the Eleventh

Circuit Court of Appeals[2] — will be helpful before the court explains the progression

of the litigation.

> The Huntsville Department of Community Development ("DCD")
> enforces Huntsville Ordinance No. 90-202, which makes it unlawful to
> store or keep on residential premises any inoperable vehicle or scrap
> metal which is viewable from any public way or private property.  When
> a DCD inspector determines that a violation exists, the inspector issues
> an official notice that informs the individual of the violation and states
> a time period to correct the violation.  If the area inspector finds that the
> violation has not been corrected within the allotted time, then a DCD
> compliance officer returns to the property and, upon ascertaining that the
> corrections have not been made, the officer issues a summons for a
> hearing before the Huntsville Municipal Court to the responsible person.
>
> At the time of the challenged actions in this case, the DCD

---

[2]Doc. no. 8 (defendant's brief), at Exhibit G (opinion of the Eleventh Circuit Court of
Appeals in *Tabolt v. City of Huntsville,* No. 00-11120 (Nov. 17, 2000)).

residential inspectors were required to knock on the entrance of the residence and state their identity and purpose. If the resident instructed the inspector to leave, then the inspector had to do so and inspect the premises from an outside vantage point. If the resident did not answer the knock, then the inspector proceeded with the premises inspection, although the inspector was not permitted to enter fenced areas. Tabolt's property, located at 2027 Sewanee Road in Huntsville, is bordered on the front and rear sides by two public streets and is bordered on either side by other residential properties. The front yard is unfenced, and the side and rear yards are enclosed by a chain-link fence.

On 25 March 1996, an official notice was issued to Tabolt concerning violations of Ordinance No. 90-202 that had been observed during a premises inspection on 21 March 1996. This notice informed Tabolt that he had until 25 April 1996 to correct the violations. When the 25 April 1996 inspection revealed that the violations had not been corrected, defendant-appellee Audey Majors, a DCD compliance officer, inspected the premises on 1, 2, 3, 6, and 7 May 1996 and determined that all of the violations had not been corrected. On each of these dates, Majors first knocked on the front door, but no one answered. On 1 May 1996, Majors left his business card at the residence, but Tabolt never contacted him. When on 8 May 1996, Majors inspected the premises and determined that the violating items remained readily visible from Tabolt's driveway and public street in front of his residence, Majors decided that he had probable cause to issue a Notice and Complaint charging Tabolt with violating Ordinance No. 90-202. He swore to the information contained in the Notice and Complaint before a Huntsville magistrate. On 8 May 1996, a certified mail summons directing Tabolt to appear before the Huntsville Municipal Court on 12 June 1996 was sent to him at his residence. Despite the fact that Tabolt resided at 2027 Sewanee Road, he did not claim the certified mail summons addressed to him, and he did not appear before the municipal court on 12 June 1996 as directed in the summons.

Because Tabolt did not appear in response to the summons, the municipal judge ordered a capias warrant for Tabolt's arrest. On 20 September 1996, Tabolt was arrested by a Huntsville police officer

pursuant to the arrest warrant.  Shortly thereafter, Tabolt was released on bond.

Tabolt also appeals the alleged unlawful search of the curtilage of his premises on 3 September 1998.  As he exited the rear door of his residence on that date, Tabolt alleges that he observed persons who had opened the gate to the fenced area of his property and entered a short way onto the back property.  Tabolt then alleges that the people hurried out the rear gate, entered their vehicles, and left.  Tabolt noticed the DCD logo on one of the vehicles, which led him to believe that they were DCD employees.  He did not know what the individuals were doing and did not testify at his deposition that they were engaged in any kind of search.[3]

Plaintiff has filed three lawsuits in this district arising out of the events recited above.  First, on October 21, 1997, he filed a *pro se* complaint against the State of Alabama Department of Housing and Urban Development, the City of Huntsville, the City of Huntsville Department of Community Development, Huntsville Mayor Loretta Spencer, former Huntsville Mayor Stephen R. Hettinger, and five other employees of the City of Huntsville: R.A. Rushbrook, Gene Benson, Jim Martin, Audey Majors, and "S. Kendrick."[4]  Plaintiff's complaint was organized into three counts, but he alleged all of the following legal violations:

Unlawful Arrest, Prosecutorial Misconduct, Malicious Prosecution, Stalking, Conspiracy, Discrimination by Coercion and Intimidation, Harassment, Interference with Livelihood Causing Financial Distress; 28 USCS 1332, 1343, 42 USCS 1983, 1985; Section

---

[3]*Id.* at 2-5.

[4]Defendant's brief, at Exhibit A (Complaint in Civil Action No. CV-97-C-2789-NE).

> 504 as Amended in 1986 of the Rehabilitation Act of 1973 (29 USCS 794); Community Development Act (42 USCS 5301); ADA 42 USCS 2000a(d), Fourth, Fifth, Six, Seventh, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.[5]

Generally, plaintiff claimed that he should not have been arrested for violating Ordinance No. 90-202, and that the arrest was carried out in a manner that violated his constitutional rights, interfered with his livelihood, and caused mental and financial distress.[6]  He also claimed that all of the defendants conspired to violate his constitutional rights.[7]   He requested compensatory and punitive damages, a declaration that his arrest was illegal, and an injunction to prevent the defendants from taking further legal action against him.[8]   On January 25, 1998, plaintiff's complaint was dismissed by U.S. District Judge U.W. Clemon, without prejudice, for failure to state a claim upon which relief could be granted.[9]

Plaintiff filed a second complaint on September 1, 1998, this time through counsel.[10]   He named the following defendants:  the City of Huntsville; Audey Majors, "a former employee of the City of Huntsville who worked in the Department of Community Development"; and R.A. Rushbrook, "an employee of the City of

---

[5]*Id.* at 1.

[6]*Id.* at Counts 1 & 2.

[7]*Id.* at Count 3.

[8]*Id.* at 6-7.

[9]Defendant's Brief, at Exhibit B (Order of Dismissal in Civil Action No. CV-97-C-2789-NE).

[10]Defendant's Brief, at Exhibit C (Complaint in Civil Action No. CV-98-H-2373-NE).

Huntsville who works in the Department of Community Development."[11]  The 1998

complaint included the following causes of action:

### A.  COUNT ONE

23.    By searching, without a warrant, the curtilage of the residence located at 2027 Sewanee Road where Plaintiff was a guest and sometimes resident, on or about March 1, 1996, as discovered by Plaintiff when he was arrested on September 20, 1996, Defendant City of Huntsville . . . violated the Plaintiff's constitutional right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

### B.  COUNT TWO

24.    By searching, without a warrant, the curtilage of the residence located at 2027 Sewanee Road where Plaintiff was then a resident, on or about September 3, 1998 [sic], Defendant City of Huntsville . . . violated the Plaintiff's constitutional right to privacy guaranteed under the Fourth, Fifth, Ninth, and Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### C.  COUNT THREE

25.    By establishing and following policies, practices, and customs which allowed searches of the curtilage of private residences without a warrant and discriminating in the enforcement of the community development ordinances with respect to persons of advanced age, disabled persons and persons with limited economic resources, including, without limitation, persons of color, the defendants conspired to deprive Plaintiff and other persons of which he was a class of their constitutional rights and privileges in violation of 42 U.S.C. § 1985.

### D.  COUNT FOUR

---

[11]*Id.* at ¶¶ 7-9.

26.     Defendant City of Huntsville, by arresting Plaintiff without probable cause and as the result of an unlawful, warrantless search, violated Plaintiff's liberty interests and right to privacy under the United States Constitution inasmuch as he was subjected to arrest and brief incarceration without the benefits of due process of law and as the result of a long history of animus toward him demonstrated by defendant Majors.[12]

Plaintiff requested a declaration that the defendants' actions violated his constitutional rights, an injunction preventing the defendants from discriminating against him and from performing warrantless searches, and compensatory and punitive damages.[13]

On April 28, 1999, Senior U.S. District Judge James H. Hancock entered an order dismissing all of plaintiff's claims against Rushbrook; dismissing Counts One, Two, and Three against Majors; and dismissing Counts One and Three against the City of Huntsville.[14]  Later, on January 26, 2000, Judge Hancock granted summary judgment on all of plaintiff's remaining claims against Majors and the City of Huntsville.[15]

Plaintiff appealed the district court's grant of summary judgment, and the

---

[12]*Id.* at ¶¶ 23-26.

[13]*Id.* at 8-9.

[14]*See* April 28, 1999 Order in *Tabolt v. The City of Huntsville, Alabama, et al.,* Civil Action No. CV-98-H-2373-NE, appended to doc. no. 1 (Complaint).

[15]Defendant's brief, at Exhibit F (Memorandum Opinion and Final Order Granting Summary Judgment in *Tabolt v. The City of Huntsville, Alabama, et al.,* Civil Action No. CV-98-H-2373-NE).

Eleventh Circuit Court of Appeals affirmed on November 17, 2000.[16]   Plaintiff submitted a petition for writ of certiorari to the United States Supreme Court on July 27, 2004, but the petition was returned on July 30, 2004, as having been filed out of time.[17]

### III. ALLEGATIONS OF PLAINTIFF'S PRESENT COMPLAINT

Defendants astutely point out that plaintiff's complaint in this case is "far from a model of clarity."[18]   The complaint does not contain separate counts alleging specific causes of action.   Instead, plaintiff states his allegations in a rambling, narrative fashion.  Making every effort to construe these allegations liberally, and in the light most favorable to plaintiff, the court concludes that plaintiff is asserting a claim for violation of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961, *et seq.* ("RICO"), as well as claims pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment right to due process, the Fourth Amendment right to be free from unreasonable searches and seizures, and the Eighth Amendment right to be free from cruel and unusual punishment.   Plaintiff also

---

[16]Defendant's brief, at Exhibit G (November 17, 2000 opinion of the Eleventh Circuit in *Tabolt v. City of Huntsville, Alabama, et al.,* No. 00-11120).

[17]*See* defendant's brief, at Exhibit H (Petition for Writ of Certiorari by Sterling Brion Tabolt in *Tabolt v. The City of Huntsville, Alabama, et al.*); s*ee also* July 30, 2004 letter from the Office of the Clerk, Supreme Court of the United States, rejecting plaintiff's petition for certiorari (appended to doc. no. 1).

[18]Defendant's brief, at 4.

requests this court to overturn the summary judgment entered against him in January of 2000. The factual allegations of plaintiff's complaint will be described in more detail as they are relevant to the analysis below, but, generally, plaintiff alleges that defendants conspired to lie and to conceal information during both the prior criminal proceedings against him, and during plaintiff's previous civil lawsuits, all for the purpose of "mak[ing] the judge rule with inadequate facts."[19]

## IV. DISCUSSION

Defendants argue that plaintiff's complaint in this case must be dismissed for the following reasons: (1) plaintiff's constitutional claims are barred by *res judicata*; (2) plaintiff is not entitled to have the summary judgment entered against him in January of 2000 set-aside; and (3) plaintiff has failed to state a viable RICO claim. The court will address each of these arguments in turn.

### A.    *Res Judicata*

Defendant first argues that plaintiff's constitutional claims — for violations of the Fourth, Eighth, and Fourteenth Amendments — are barred by the doctrine of *res judicata* because they either were, or could have been, raised in plaintiff's 1998 lawsuit.

> *Res judicata* . . . bars relitigation of matters decided in a prior
> proceeding. *See Israel Discount Bank, Ltd. v. Entin*, 951 F.2d 311, 314

---

[19]Doc. no. 1 (Complaint), at 8.

> (11th Cir.1992). "Specifically, it will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same." *Id.* (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990)).

*Jang v. United Technologies Corp.,* 206 F.3d 1147, 1149 (11th Cir. 2000). *Res judicata* applies "not only to claims that were raised in the prior action, . . . *but also to claims that could have been raised previously.*" *Davilla v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1187 (11th Cir. 2003) (emphasis supplied) (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1271 (11th Cir. 2002)).

All of these elements are easily satisfied with regard to plaintiff's constitutional claims. In plaintiff's 1998 lawsuit, a judgment on the merits — a summary judgment in favor of defendant — was entered by this court, a competent forum to exercise jurisdiction over plaintiff's claims. Furthermore, all of the parties in this suit also were present in plaintiff's 1998 lawsuit.[20] Finally, all of the constitutional claims presented in this case are the same as claims that either were, or could have been, asserted in plaintiff's 1998 lawsuit. Two causes of action are the same for *res judicata* purposes if they "arise 'out of the same nucleus of operative fact, or [are]

---

[20]*See* doc. no. 1 (Complaint) (asserting claims against The City of Huntsville, Alabama and Audey Majors); *see also* Defendant's Brief, at Exhibit C (Complaint in Civil Action No. CV-98-H-2373-NE) (asserting claims against The City of Huntsville, Alabama, Audey Majors, and R.A. Rushbrook).

based upon the same factual predicate.'" *Davilla,* 326 F.3d at 1187 (quoting *In re*

*Piper Aircraft Corp*., 244 F.3d 1289, 1297 (11th Cir. 2001)).  In this case, plaintiff

supports his constitutional claims by alleging that defendant Majors "willfully and

maliciously committed perjury to instigate the legal action causing the Petitioner's

arrest" in 1996, in violation of the Fourth and Fourteenth Amendments.[21]  He also

alleges that "[t]he City, acting as a ringmaster, subjected [him] to numerous

fraudulent legal actions that constitute cruel and unusual punishment . . . a violation

of the Eighth Amendment of the United States Constitution."[22]  Presumably, this

allegation again refers to plaintiff's 1996 arrest.  Similarly, in his 1998 lawsuit,

plaintiff complained that various circumstances surrounding his 1996 arrest caused

violations of the Fourth and Fourteenth Amendments.[23]  Although plaintiff did not

raise a specific Eighth Amendment claim in his 1998 lawsuit, the Eighth Amendment

claim he makes in this lawsuit is based upon the same, common nucleus of operative

facts as his other constitutional claims, *i.e.,* his 1996 arrest.  Further, even though

plaintiff did not assert an Eighth Amendment claim in his 1998 lawsuit, he could have

done so.  Accordingly, all of the elements of *res judicata* have been satisfied with

regard to the constitutional claims plaintiff asserted in this case, and all of those

---

[21]Doc. no. 1, at 9, 31.

[22]*Id.* at 32.

[23]*See* Complaint in Civil Action No. CV-98-H-2373-NE, at ¶¶ 23-26.

claims are barred.

## B.   "Reversal" of 2000 Summary Judgment

Defendants also argue that plaintiff is not entitled to have the summary judgment entered against him in 2000 reconsidered, vacated, reversed, or set aside. Plaintiff's arguments in favor of setting aside the entry of summary judgment are scattered and often difficult to discern.  Essentially, however, plaintiff asserts that, during the course of the 1998 lawsuit, defendants misrepresented that he was the proper person to cite for a violation of Ordinance No. 90-202.  He claims that defendants' misrepresentations constituted obstruction of justice and a fraud on the court, rendering the judgment entered against him "null and void."[24]

---

[24]Doc. no. 1, at 7.  *See also id.* at 8 ("There was fraud, misrepresentation, AND misconduct against the U.S. District Court N.D. of Alabama AND the U.S. Court of appeals 11th Circuit by officials of the City of Huntsville AND their attorneys to cover up the illegal mailing of a fraudulent letter.") (emphasis in original), 9 ("Majors willfully and maliciously committed perjury to instigate the legal action causing the Petitioner's arrest. . . ."), 10 ("The City of Huntsville, et al., and their attorneys perjured themselves by continually providing inaccurate and misleading information to the federal court."), 15 (stating that defendants "willfully misrepresented the facts knowing those facts to be false, i.e., committed fraud and perjury for the very purpose of corruptly affecting the outcome of the 1998 trial (CV 98-H-2373-NE), stating that [plaintiff] was legally accountable for violation of Ordinance 90-202"), 17 ("stating that defendants and their attorneys made statements "for the purpose of corruptly influencing the outcome of the [1998] trial"), 18 (stating that defendants "committed obstruction of justice, perjury, fraud, etc., by misrepresenting the material facts that were pertinent to the determination of the courts"), 20 ("Majors and DCD employees willfully and maliciously provided inaccurate and misleading information to deceive the Huntsville Municipal Court system by covering up the illegal mailing of a fraudulent DCD city code violations notice which prompted the unlawful arrest, incarceration, and trial of the Petitioner."), 26 (stating that defendants conspired by "maliciously and fraudulently misrepresenting materially and factually the person responsible for violations of Huntsville City Ordinance 90-202, thus corruptly affecting the course and/or outcome of the official proceeding."), 28 ("[T]he whole issue in this case is that DCD policy and procedure states that if an estate exists, it is the estate's responsibility for the property's

Plaintiff relies upon Federal Rule of Civil Procedure 60 to support his request to set aside the 2000 summary judgment.  That rule provides, in pertinent part, that

> [o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(3)-(6).  Rule 60 also makes it clear that its language "does not limit a court's power to . . . set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).

Rule 60 contains certain time limitations.  Any motion brought under Rule 60(b) "must be made within a reasonable time — and for reasons (1), (2), and (3) no

condition.  Pursuant to DCD policy and procedure, charging the wrong party makes DCD's legal action null and void."), 28 ("[Plaintiff's] arrest was a direct result of Majors' willful and malicious act of deceiving the magistrate."), 29 ("Fraud occurred when Majors falsely misrepresented the facts, i.e., committed perjury, to deceive the magistrate for the very purpose of instigating the legal proceedings that brought about the Petitioner's arrest in 1996."), 31 (stating that defendants' attorneys "deceived the courts by their perjury for the purpose of influencing the outcome of the federal district court proceedings"), 31 ("The willful and malicious perjury committed against the Petitioner instigated the legal action causing the Petitioner's arrest . . . .").

more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  The summary judgment in plaintiff's 1998 case was entered in January of 2000, more than eight years before plaintiff filed the present lawsuit in September of 2008.  Thus, to the extent plaintiff's Rule 60 request is based upon subdivision (b)(3) of Rule 60, "fraud," it clearly is time-barred.

Even to the extent plaintiff's Rule 60 request is based upon subdivision (b)(4), (b)(5), or (b)(6) of the rule, he fares no better.  As an initial matter, plaintiff has no legal or factual basis for relief under any of these subdivisions.  Plaintiff does assert that the 2000 summary judgment is void, but only because of the fraudulent misrepresentations allegedly made by defendants and their attorneys.  As stated above, to the extent that plaintiff is attempting to have the summary judgment set-aside due to fraud, the request is time-barred.  Further, plaintiff makes no argument that the 2000 summary judgment has been "satisfied, released or discharged," that it is "based on an earlier judgment that has been reversed or vacated," that it would be inequitable to continue to enforce the judgment, or that any other reason exists to justify relief.  Fed. R. Civ. P. 60(b)(5)-(6).  Finally, the court concludes that, even if plaintiff did have some basis for relief under the language of subdivisions (b)(4)-(b)(6), his request was not made within a "reasonable time."  Plaintiff makes no argument that his eight-year delay in filing for Rule 60(b) relief was reasonable, and

the court cannot conclude that it was.

Thus, plaintiff's only remaining option under Rule 60 is an independent action to have the judgment set aside due to fraud on the court. *See* Fed. R. Civ. P. 60(d)(3). The Supreme Court has cautioned that "an independent action should be available only to prevent a grave miscarriage of justice." *U.S. v. Beggerly,* 524 U.S. 38, 47 (1998). Furthermore, the concept of a fraud on the court "'cannot necessarily be read to embrace any conduct of which the court disapproves.'" *Travelers Indemnity Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir. 1985) (quoting *Williams v. Bd. of Regents*, 90 F.R.D. 140, 142 (M.D. Ga. 1981)). Instead, a fraud on the court encompasses only

> that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

*Travelers,* 761 F.2d at 1551 (citing 7 *Moore's Federal Practice* ¶ 60.33) (emphasis in original). "Generally, 'only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court.'" *Patterson v. Lew,* 265 Fed. Appx. 767, 768-69 (11th Cir. 2008) (quoting *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978)).[25] Fraud between two parties — including "an attorney's

---

[25]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to

failure to disclose information that may have been helpful to the defense," or the

failure to disclose "'facts pertinent to a controversy before the court.'" — does not

constitute fraud on the court. *Patterson,* 265 Fed. Appx. at 769 (citing *S.E.C. v. ESM*

*Group, Inc.,* 835 F.2d 270, 273-74 (11th Cir. 1988); *Kerwit Medical Products, Inc.*

*v. N & H Instruments, Inc.,* 616 F.2d 833 (5th Cir. 1980)).  Similarly,

> [a]n erroneous legal contention . . . does not have obstructive capability,
> and is not fraud merely because if believed it would confer an advantage
> on the party making it.  If that were the standard for fraud on the court,
> no civil judgments would be final; every legal error that a judge
> committed that had been invited by the winning litigant would be, prima
> facie, fraud on the court.

*Stevens v. East Alabama Health Care Authority,* No. 3:00-CV-1509-F(WO), 2005

WL 3288735, at *6 (M.D. Ala. Dec. 5, 2005) (citing *Oxxford Clothes, Inc. v.*

*Expeditors Int'l of Washington, Inc.,* 127 F.3d 574, 578 (7th Cir. 1997)).

Plaintiff has alleged no conduct by defendants that would defile the court, or

which would prevent the judiciary from performing its ordinary functions.  The sole

basis for plaintiff's fraud on the court argument is that defendants fraudulently

misrepresented to the judges presiding over plaintiff's prior lawsuits that he was the

proper party to hold responsible for a violation of Ordinance No. 90-202.  Any such

misrepresentation on defendants' part would amount to nothing more than a failure

to disclose information or an erroneous legal contention.  There is no indication that

---

the close of business on September 30, 1981.

plaintiff was prevented from arguing in his other lawsuits that he was not responsible for any violations of the ordinance.  In fact, plaintiff raised that very argument in the brief he filed to oppose defendant's summary judgment motion in the 1998 case,[26] and he did not receive a favorable ruling.  Plaintiff cannot use an independent action in this forum "as a vehicle for the relitigation of issues." *Travelers,* 761 F.2d at 1552. *See also id.* at 1552 ("[F]or fraud to lay a foundation for an independent action, it must be such that *it was not in issue in the former action nor could it have been put in issue by the reasonable diligence of the opposing party*.") (emphasis supplied) (citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 425 (1923)).

Even plaintiff's allegations of perjury cannot support a claim for fraud on the court.  He alleges that the City of Huntsville and its attorneys "perjured themselves by continually providing inaccurate and misleading information to the federal court."[27]  He also alleges that the City of Huntsville, the City's attorneys, and City DCD employee Audy Majors "committed fraud and perjury for the very purpose of corruptly affecting the outcome of the 1998 trial (CV 98-H-2373-NE), stating that

---

[26]*See* defendant's brief, Tab E (plaintiff's brief in opposition to summary judgment in Civil Action No. CV-98-H-2373-NE), at 6 ("There is even a question of fact presented in this case as to whether Tabolt was the proper person to be cited at all.  The 2027 Sewanee property is legally held by the Estate of Neil Munroe Tabolt.  Jerry Galloway, Director of the Department of Community Development, testified that 'the owner of record or the administrator of the estate who has custodial responsibility' would be cited.").

[27]Doc. no. 1, at 10.

[plaintiff] was legally accountable for violation of Ordinance 90-202 at 2027 Sewanee,"[28] and that the City's attorneys "deceived the courts by their perjury for the purpose of influencing the outcome of the federal district court proceedings."[29] To the extent plaintiff alleges that defendants City of Huntsville or Audey Majors committed perjury, the Eleventh Circuit has held that perjury by *a party* cannot form the basis of fraud on the court "because the opposing party is not prevented from fully presenting his case and raising the issue of perjury in the original action." *Travelers,* 761 F.2d at 1552. To the extent plaintiff alleges perjury by the attorneys who represented the City of Huntsville in the 1998 lawsuit, there is no allegation, or even any indication, that those attorneys actually testified under oath or made a sworn statement during the 1998 lawsuit. Consequently, it cannot be said that those attorneys committed perjury. *See* 18 U.S.C. § 1961.

In summary, there is no basis for vacating, setting aside, or "reversing" the summary judgment entered against plaintiff in 2000.

## C.   Viability of RICO Claim

Defendants argue that plaintiff's RICO claim must be dismissed because the City of Huntsville cannot be held liable under RICO, and because the RICO claim is

---

[28]*Id.* at 15.

[29]*Id.* at 31.

barred by the applicable statute of limitations.  Plaintiff concedes that the City of Huntsville cannot be held liable under RICO.[30]  Accordingly, the court need only consider whether plaintiff filed his RICO claim prior to expiration of the statute of limitations.

A civil RICO claim must be brought within four years of the date it accrues. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987). The claim accrues when the plaintiff knew or should have known of his injury. *Rotella v. Wood,* 528 U.S. 549, 553-54 (2000); *Maiz v. Virani,* 253 F.3d 641, 676 (11th Cir. 2001).  Plaintiff's RICO claim is founded on defendants' alleged conspiracy to commit "fraud, perjury, and obstruction of justice" in order to have him falsely charged with violations of Ordinance No. 90-202.[31]  All of the injuries plaintiff could possibly have suffered as a result of this alleged conspiracy — including his 1996 arrest, the dismissal of his 1997 and 1998 lawsuits, his unsuccessful appeal to the Eleventh Circuit in 2000, and his unsuccessful petition for certiorari in July of 2004 — occurred, or should have been apparent to plaintiff, more

---

[30]*See* doc. no. 11 (plaintiff's response to defendants' motion for summary judgment), at 20 (acknowledging that "the City of Huntsville enjoys immunity under the RICO statute").

[31]Doc. no. 1, at 16; *see also* doc. no. 11, at 16 ("DCD employees conspired to breach their functionary [sic] duty in order to evade City policy and procedure by using mail fraud over a period of 10 years to establish their claim against the Plaintiff.  These actions are the basis for the Plaintiff's RICO conspiracy claim against the Respondents."), 18 ("A conspiracy existed within the DCD in regards to Plaintiff.  The point of this conspiracy was to subject the Plaintiff to multiple bad faith prosecutions in deference to the fact that DCD could not legally charge the Plaintiff.").

than four years before he filed his present lawsuit on September 19, 2008.

Plaintiff nonetheless argues that his RICO claim is timely because he did not discover "the existence and proof of the fraud and perjury" until either April of 2003, when his former attorney gave him copies of deposition transcripts taken during his prior lawsuits, or September 20, 2004, when "he determined that the evidence was sufficient for a RICO conspiracy by the defendants' actions."[32]  Even if plaintiff did not discover any evidence of a RICO conspiracy until April of 2003, that date still falls well outside the four-year limitations period.

Plaintiff's claim also is not saved by his allegation that, due to his "lack of legal training," he did not realize until September 20, 2004 (conveniently, the first date that would fall within the four-year limitations period) that the evidence in his possession could form the basis for a RICO claim.[33]  First of all, the record belies plaintiff's argument.  In plaintiff's *June 2004* petition for writ of certiorari to the United States Supreme Court, he argued that the actions of the City of Huntsville and its employees and attorneys supported a RICO violation.[34]  Therefore, it is apparent that plaintiff made the connection between defendants' alleged actions and a potential RICO

---

[32]Doc. no. 1, at 8; *see also* doc. no. 11, at 13-14.

[33]Doc. no. 1, at 8.

[34]Defendant's brief, Tab H, at 38 ("[T]he accumulated actions of DCD employees and [the City's attorneys] fit the pattern of racketeering activity under the Racketeer Influenced and Corrupt Organization Act (RICO).")

violation several months *before* September 20, 2004.  Furthermore, even if the facts did not contradict plaintiff's argument, the law would.  Essentially, plaintiff is requesting that the statute of limitations be equitably tolled because he did not fully understand RICO law.  The Eleventh Circuit has held, however, that ignorance of the law, by itself, is not sufficient to warrant equitable tolling.  *Jackson v. Astrue,* 506 F.3d 1349, 1356 (11th Cir. 2007).  *See also Wakefield v. Railroad Retirement Board,* 131 F.3d 967, 970 (11th Cir. 1997) ("Ignorance of the law usually is not a factor that can warrant equitable tolling.").  *Cf. Toole v. McDonough,* No. 1:06-cv-696-MHT (WO), 2008 WL 4767465, *4 (M.D. Ala. Oct. 30, 2008) (holding that "[n]either an inmate's lack of legal knowledge, his failure to understand legal principles, nor his inability to recognize potential claims for relief at an earlier juncture constitute extraordinary circumstances" sufficient to warrant equitable tolling).  Here, there are no other circumstances to support the application of equitable tolling, especially considering that plaintiff either knew, or should have discovered, all of the conduct allegedly supporting his RICO claim well before the statute of limitations period expired.

In summary, plaintiff's RICO claim is barred by the statute of limitations and must be dismissed.

## IV. CONCLUSION AND ORDER

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED, and all of plaintiff's claims are DISMISSED with prejudice.   Costs are taxed to plaintiff.  The clerk is directed to close this file.

DONE this 2nd day of February, 2009.

_____
United States District Judge